## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ALLIED WORLD SURPLUS LINES INSURANCE COMPANY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  2:22-cv-00738-RDP** |
| } | |
| **LOVETTE PROPERTIES, LLC, et al.,** } | |
| } | |
| **Defendants.** } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Allied World Surplus Lines Insurance Company's ("Allied World") Renewed Motion for Summary Judgment. (Doc. # 45). The Motion has been fully briefed. (Docs. # 47, 48, 49). For the reasons discussed below, the Motion (Doc. # 45) is due to be granted.

## I.    Factual Background[1]

This matter stems from general liability insurance policies that Allied World issued to Clint Lovette ("Lovette") and Lovette Properties, LLC, d/b/a as both Lovette Construction and Lovette Design + Build ("Lovette Properties") (collectively "Lovette Defendants") for the policy periods of March 16, 2018 to March 16, 2019 and March 16, 2019 to March 16, 2020.[2] Allied World seeks

---

[1] The Clerk of Court entered entries of default against Defendants Clint Lovette and Lovette Properties. (Docs. # 18, 19). "[A] default is 'not an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' but is instead merely 'an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability.'" *First Fin. Bank v. Stancell*, 2015 WL 1549258, at *1 (M.D. Ala. 2015) (citations omitted). By virtue of the Lovette Defendants' default, all of the factual allegations in the Complaint are deemed admitted. Moreover, in any event, they are not disputed by the other parties to the case.

[2] The court notes that Allied World also issued a 2020/2021 renewal Policy to Lovette and Lovette Properties as well. In their summary judgment motion, Allied World states that "on April 1, 2020, Mr. Lovette requested

a judicial determination in its favor that it does not owe the Lovette Defendants a defense or indemnity regarding two cases: (1) *Scott Wheeler and Julie Wheeler v. Lovette Properties, LLC d/b/a Lovette Construction* ("*Wheeler* arbitration"), a matter in private arbitration, and (2) *Allison Adams and Carl Adams v. Lovette Properties, LLC, and Clint Lovette*, CV-2020-901416, filed in the Circuit Court of Jefferson County, Alabama ("*Adams* case"). The relevant facts are set out below.

      **a.     The Wheeler Project**

On February 15, 2016, Scott and Julie Wheeler ("the Wheelers") entered into a fix-priced contract with Lovette Properties for the renovation of their residence ("Wheeler project"). (Doc. # 1 at ¶ 14). Throughout the renovation, the Wheelers identified problems with the work being performed and relayed those issues to Lovette Properties. (*Id.* at ¶ 15).

In early September 2017, the Wheelers threatened to sue Lovette Properties to recover all sums paid if the Wheeler project was not completed by the end of 2017. (Doc. # 33-1 at ¶ 31). On September 7, 2017, Scott Wheeler emailed Clint Lovette and referenced that "financial consequences" awaited Lovette Properties if the project was not completed by the end of the year. (Doc. # 33-2 at 2). Lovette later testified in Bankruptcy Court that this statement concerned him because "that sounds like a lawsuit that the client is threatening, and also knowing where we were with still decisions to be made, that the chances of us getting that project completed by year end were slim." (Doc. # 33-3 at 82:10-83:3).

On September 8, 2017, the Wheelers met with employees from Lovette Properties, where they again threatened "financial consequences" if the Wheeler project was not completed by the end of the year. (*Id.* at 83:4-83:18). After this meeting, Clint Lovette consulted an attorney and

---

cancellation of the policy. Pursuant to his request, Allied World cancelled the policy as if it had never existed." (Doc. # 47 at 4). Accordingly, the court does not discuss the 2020/2021 Policy in this memorandum opinion.

decided to terminate the contract (*id.* at 84:2-84:22), and on September 12, 2017, sent a letter to the Wheelers informing them that he was terminating the contract because of delays caused by the Wheelers not making timely selections of fixtures, which interfered with the work of subcontractors. (Doc. # 33-1 at ¶ 32).

On September 16, 2017, the Wheelers responded to Lovette's termination letter, insisting that the contract was "prematurely terminated" and "abandon[ed] … prior to its completion." (Doc. # 33-4 at 2). The Wheelers maintained that any delays associated with the project were not the fault of the Wheelers, but "the result of poor performance by Lovette [Properties], specifically incompetent project management, ineffective communication, lack of adequate oversight of subcontractors, and poor schedule organization." (*Id.*). The Wheelers also informed Lovette Properties that they were considering all available options for remedying the situation and asserted that their letter "does not constitute a waiver of any of our rights or remedies, all of which are expressly reserved." (*Id.*).

**b.    The 2018/2019 Policy**

On April 16, 2018, Clint Lovette, on behalf of Lovette Properties, signed and submitted a "Contractor's Supplemental Application" requesting general liability insurance coverage from Allied World. (Doc. # 33-7). In the Contractor's Supplemental Application, Lovette represented: (1) that the Lovette Defendants had no losses, claims, or suits against them in the past 8 years; (2) that no claims or legal actions were pending; (3) that the Lovette Defendants had no knowledge of any pre-existing act, omission, event, condition, or damage to any person or property that might reasonably be expected to give rise to any future claim or legal action against any person or entity identified in the application; (4) that the Lovette Defendants had not been accused of faulty

construction in the past 8 years; and (5) that the Lovette Defendants had not been accused of breaching a contract in the past 8 years. (*Id.* at 7; Doc. # 1 at ¶ 50).

Allied World issued a 2018/2019 Insurance Policy ("the 2018/2019 Policy") to Lovette Properties in reliance on the information provided in the application. (Docs. # 1 at ¶ 51; 33-5 at ¶ 11). The 2018/2019 Policy contained a "Named Insured Endorsement" that states:

> By accepting this policy, each Named Insured agrees:
>
> a.   The statements contained in Policy Declarations and any other supplemental materials, application and information submitted herewith are true, accurate, and complete, and such statements and representations are incorporated herein and made a part of this policy;
> b.   Those statements are based upon representations you made to us; and
> c.   We have issued this policy in reliance on your representations, and such statements and representations are incorporated herein and made a part of this policy.

(Docs. # 1 at ¶ 57; 33-6 at 48).

In addition, the 2018/2019 Policy contained a provision titled "Duties in the Event of Occurrence, Offense, Claim or Suit" requiring the insured to give Allied World notice of an "occurrence" which may result in a claim or a "suit" that is brought against the insured "as soon as practicable" (the "Notice Policy"). The Notice Policy states:

> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim…**b**. If a claim is made or "suit" is brought against any insured, you must…[n]otify us as soon as practicable…You must see to it that we receive written notice of the claim or "suit" as soon as practicable. **c.** You and any other involved insured must…[i]mmediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit."

(Docs. # 33-6 at 16; 1 at ¶ 65-67).

### c.   The *Wheeler* Arbitration

In October 2018, the Wheelers filed an Arbitration Complaint against Lovette Properties, alleging: (1) Negligence/Wantonness: Construction/Renovation; (2) Negligence: Repair; (3)

Negligence: Hiring/Supervision/Training; (4) Suppression; (5) Breach of Warranties; and (6) Breach of Contract. (Doc. # 5-1).

The Arbitration Complaint, which is still pending, seeks recovery of the costs associated with completing the renovation of the house; consequential damages for the cost of repairs to the house; the costs for maintaining another household during construction; damages for mental anguish and emotional distress; and "exemplary damages to the extent permitted by law [and] … the costs of this action, attorneys' fees, expenses, and interest on the judgment as allowed by law." (*Id.* at 9, ¶ 11).

### d.    The 2019/2020 Policy

On February 6, 2019, Clint Lovette, on behalf of Lovette Properties, electronically signed and submitted a second Contractor's Supplemental Application, this time requesting the Allied World Insurance Policy be renewed for 2019-2020. In this application, Lovette represented: (1) that the Lovette Defendants had no losses, claims, or suits against them in the past 5 years; (2) that no claims or legal actions were pending; (3) that the Lovette Defendants had no knowledge of any pre-existing act, omission, event, condition, or damage to any person or property that might reasonably be expected to give rise to any future claim or legal action against any person or entity identified in the application; (4) that the Lovette Defendants had not been accused of faulty construction in the past 5 years; and (5) that the Lovette Defendants had not been accused of breaching a contract in the past 5 years. (Doc. # 33-9 at 13).

Allied World issued a second insurance policy for the period of 2019-2020 ("the 2019/2020 Policy") to Lovette Properties in reliance on the information provided in the application. (Doc. # 33-5 at ¶ 21). The 2019/2020 Policy contained the same "Named Insured Endorsement" and Notice Policy as the 2018/2019 Policy. (Doc. # 1 at ¶¶ 57, 65-67).

e.     The *Adams* Case

On April 15, 2020, Allison and Carl Adams ("the Adamses") filed a civil action against Clint Lovette and Lovette Properties in the Circuit Court of Jefferson County, Alabama. (Doc. # 5-2).

In the Complaint, the Adamses alleged that they entered into a contract with Lovette Properties on April 26, 2019 for improvements to their residence. (*Id.* at ¶ 12). The Adamses also alleged (1) that, throughout the construction project, they relayed numerous problems about work being performed on the house to Clint Lovette that he failed to rectify, (2) that construction took longer than required under the contract, and (3) that Lovette Properties abandoned the project before completion and left the house in a manner that did not comply with the applicable building codes and industry standards. (*Id.* at ¶¶ 13-17). In total, the Adamses asserted seven causes of action against Lovette Properties, including claims of negligence and wantonness, breach of contract and warranties, and conversion. (*Id.* at 7-11).

The *Adams* case was tried as a bench trial before Judge Robert Vance in Birmingham, Alabama. (Doc. # 33-11). On December 20, 2022, Judge Vance entered a judgment for $149,214.23 in favor of the Adamses only on the contractual and negligence claims. (*Id.* at 3). However, Judge Vance found that the parties' contract included a limitation of liability provision that limited damages to only direct damages, "i.e., the costs of repairing the actionable construction deficiencies," and thus held that the Adamses could not recover consequential, indirect, special, or punitive damages. (*Id.* at 2). Further, Judge Vance held that there was "insufficient evidence to support any wantonness claim, and that a contract claim was the only basis to recover for alleged non-performance of contractual obligations." (*Id.*).

### f.      Lovette's Notice of Claim

Allied World received an ACORD "General Liability Notice of Occurrence/Claim" dated June 16, 2020. (Doc. 33-12 at 2). The document listed the name of the insured as Lovette Properties. (*Id.*). The "agency" listed on the document was Lakeview Risk Partners, LLC, located in Birmingham, Alabama. (*Id.*).

The document lists the date of loss as March 16, 2019, and states the location of the occurrence of loss at 910 Essex Road, Birmingham, Alabama 35222 – the address of the Wheeler residence. (*Id.*). The document describes the loss as "[l]awsuit received alleging negligence in construction of remodel project." (*Id.*)

## II.      Procedural History

On June 13, 2022, Allied World filed the Complaint in this federal litigation against Lovette Properties, Clint Lovette, the Wheelers, the Adamses, and Will and Dana Ferniany ("the Fernianys"), seeking a declaration from the court that Allied World has no duty to defend or indemnify Clint Lovette or Lovette Properties under the 2018/2019 Policy or 2019/2020 Policy with respect to the claims asserted against them by the other Defendants. (Doc. # 1).

Neither Clint Lovette nor Lovette Properties filed a response to the Complaint. (Docs. # 16, 17). As a result, on September 20, 2022, the Clerk of Court entered Entries of Default against both Clint Lovette and Lovette Properties for failing to answer or otherwise plead to the Complaint. (Docs. # 18, 19).

On February 9, 2023, Allied World filed a Stipulation of *Pro Tanto* Dismissal of the Fernianys (Doc. # 28), and the court dismissed them from the case without prejudice. (Doc. # 31).

On February 10, 2023, Allied World filed a Motion for Summary Judgment. (Doc. # 32). However, on March 21, 2023, the court administratively terminated the Motion for Summary

Judgment without prejudice to allow the parties to conduct discovery on the issue of fraudulent misrepresentation. (Doc. # 40).

On July 14, 2023, Allied World renewed its Motion for Summary Judgment. (Doc. # 45). On August 4, 2023, the Wheelers and the Adamses (collectively "Defendants") responded to Allied World's Motion for Summary Judgment. (Doc. # 48). Allied World filed a reply in support of its Motion for Summary Judgment on August 18, 2023. (Doc. # 49).

## III.    Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty*., 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

The court notes that the standard of review on a motion for summary judgment differs depending on whether the party moving for summary judgment bears the burden of proof on the claim at issue. As the Sixth Circuit has noted:

> When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. But where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.

*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting William W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). "Where the movant also bears the burden of proof on the claims at trial, it 'must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether.'" *Franklin v. Montgomery Ctv., Md*., 2006 WL 2632298, at *5 (D. Md. Sept. 13, 2006) (quoting *Hoover Color Corp. v. Bayer Corp*., 199 F.3d 160, 164 (4th Cir. 1999)) (alteration in original).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251-52) (internal quotations omitted); *see also LaRoche v. Denny's, Inc*., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV.     Discussion

In its Complaint for Declaratory Judgment, Allied World sought the following declarations:

1.  That no coverage exists for the *Wheeler* arbitration, the *Adams* suit, and the *Ferniany*[3] suit because Clint Lovette and Lovette Properties, LLC made material misrepresentations in applying for the policies;

2.  That Clint Lovette and Lovette Properties, LLC failed to provide timely notice and satisfy the duties and conditions required for coverage;

3.  That the claimed damages do not meet the insuring agreement of the policies; and

4.  That policy exclusions bar coverage for the claims and damages in the underlying lawsuits.

(Doc. # 1 at 9-23).

Allied World asserts that summary judgment in its favor is proper for three reasons. First, Allied World argues that the 2018/2019 and 2019/2020 Policies are due to be rescinded under Alabama Code § 27-14-7(a), and thus Allied World is relieved of its obligation to defend or indemnify the Lovette Defendants in both the *Wheeler* arbitration and the *Adams* case. In addition, Allied World argues that, even if the court finds that the Policies are not due to be rescinded, summary judgment is still proper because: (1) the Lovette Defendants breached the notice conditions of the Allied World policies regarding the *Wheeler* arbitration and (2) the Allied World policies do not cover the judgment in the *Adams* case. The court analyzes each argument, in turn.

### A.     Rescission under Alabama Code § 27-14-7

Allied World first argues that, because of the Lovette Defendants' misrepresentations, omissions, concealment of facts, and incorrect statements in the 2018 and 2019 Contractor's

---

[3] The *Fernianys* were previously dismissed from the case without prejudice. (Doc. # 31).

Supplemental Applications, Alabama Code § 27-14-7(a) prevents recovery under the Policies.

Section 27-14-7(a) states:

> (a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> > (1) Fraudulent;
> >
> > (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> >
> > (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or the contract or otherwise.

Ala. Code § 27-14-7(a) (1975).

Based on this statutory language, "Alabama statutory law provides three alternative grounds for recission."[4] *In re HealthSouth Corp.*, 308 F. Supp. 2d 1253, 1269 (N.D. Ala. 2004). "An insurer can rescind a policy or deny coverage if, in the application or 'in negotiations therefor,' the insured made misstatements that either (1) were fraudulent (i.e., made intentionally with knowledge); … (2) were material to the risk (although innocently made); or (3) affected the insurer's good faith decision to issue the policy for which the insured applied." *Id.* at 1269-1270 (citations omitted).

---

[4] Although often referred to as the "rescission statute," Section 27-14-7(a) does not actually include that term in its text. Instead, the statute speaks of "prevent[ing] a recovery under the policy." Thus, the grounds for rescission discussed here may also apply to deny coverage under a valid contract of insurance.

Allied World contends that the Lovette Defendants made several material misrepresentations in both Contractor's Supplemental Applications. The court addresses these below.

First, Allied World alleges that, as early as September 22, 2017[5], Clint Lovette was "fully aware that the Wheelers had made written complaints of poor performance, incompetent project management, ineffective communication, lack of adequate oversight of subcontractors, and poor schedule organization" against the Lovette Defendants. (Doc. # 47 at 23). Further, Clint Lovette acknowledged under oath that, even to him, it sounded like there was a threat of a lawsuit. (*Id.*) (citing Doc. # 33-3 at 82:25-83:3). Despite this knowledge, on April 16, 2018, Lovette stated on the 2018 Contractor's Supplemental Application that there were no claims or legal actions pending against him or his company, that he did not know of any pre-existing event or damage to any person or property that might reasonably lead to a future legal claim or action, and that he had never been accused of faulty construction or breaching a contract in the past eight years. (Docs. # 47 at 24; 33-7 at 7).

Then, on February 7, 2019[6], Lovette completed a second Contractor's Supplemental Application for the 2019-2020 policy period. (Doc. # 33-9). At this point, the *Wheeler* arbitration was active and had been pending for six months. (Doc. # 5-1). Nevertheless, Lovette once again attested that there were no claims or legal actions against him or his company in the past five years,

---

[5] Allied World's Brief in Support of Renewed Motion for Summary Judgment (Doc. # 47) states that the Lovette Defendants were fully aware as of September 22, 2018 that the Wheelers had made written complaints against them. (Doc. # 47 at 23). However, because the factual section of the same brief states -- and the later sentences in the same paragraph infer -- that all written complaints alleging these matters occurred in 2017, the court, in fairness, construes the date reading September 22, 2018 as a typographical error.

[6] Once again, there is discrepancy between the alleged date the renewal application was completed in Allied World's Complaint (Doc. # 1 at 10) and the factual section of its Motion for Summary Judgment (Doc. # 47 at 8) (February 7, 2019) when compared to the dates referenced in the argument portion of the Motion for Summary Judgment (Doc. # 47 at 24) (February 19, 2018). Because the Contractor's Supplemental Application states that it was signed on February 7, 2019, the court uses that date. (Doc. # 33-9 at 14).

that he did not know of any pre-existing event or damage to any person or property that might reasonably lead to a future legal claim or action, and that he had not been accused of faulty construction or breaching a contract in the past five years. (Doc. # 33-9 at 13).

As a result, Allied World argues that all three subsections of Alabama Code § 27-14-7(a) prevent recovery under the 2018/2019 and 2019/2020 Policies. That is, it contends that summary judgment in its favor is warranted because the Lovette Defendants' misrepresentations on the applications were (1) fraudulent; (2) material; and (3) of such a nature that Allied World would not have issued the Policies or would have done so with different terms and/or premiums. The court analyzes each of these assertions below.

### 1. Whether Allied World may void the policies based on Section 27-14-7(a)(1) or (2) is a question of fact.

Allied World contends that the policies are void under Section 27-14-7(a)(1) or (2). Allied World argues this is so because the Lovette Defendants made misrepresentations, omissions, or incorrect statements, or concealed facts that were material to the decision of whether to issue the policies. However, as outlined below, there are fact issues that preclude this court from finding that Allied World is entitled to rescind the policies under either Section 27-14-7(a)(1) or (2).

### a.   Allied World need not prove intentional fraud.

Allied World first argues that the Lovette Defendants represented answers to specific questions on the two applications that were false and fraudulent; therefore, Allied Word contends it is relieved of its duty to indemnify and defend the Lovette Defendants under Alabama Code § 27-14-7(a)(1).

In Alabama, "[m]isrepresentation of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute[s] legal fraud." Ala. Code § 6-5-101. So, the section's

language is presented in the disjunctive: made willfully to deceive or recklessly (if acted upon) or mistakenly or innocently (if acted upon). Therefore, to prove fraud based on the misrepresentation of a material fact, Allied World must show: (1) a misrepresentation; (2) of a material fact; (3) that was relied upon by Allied World; and (4) damages as a proximate result of the misrepresentation. *Sherrin v. Nw. Nat. Life Ins. Co.*, 2 F.3d 373, 378 (11th Cir. 1993) (citing *Earnest v. Pritchett-Moore*, 401 So. 2d 752, 754 (Ala. 1981)); *AmerUS Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1207 (Ala. 2008). "A 'material fact' is 'a fact of such a nature as to induce action on the part of the complaining party.'" *Nationwide Mut. Fire Ins. Co. v. Guster Law Firm, LLC*, 944 F. Supp. 2d 1116, 1125 (N.D. Ala. 2013) (citing *Graham v. First Union Nat. Bank of Georgia*, 18 F. Supp. 2d 1310, 1317 (M.D. Ala. 1998) (in turn citing *Bank of Red Bay v. King*, 482 So. 2d 274 (Ala. 1985)). Further, "the misrepresentation need not be the *sole* inducement. It is sufficient if it materially contributes and is of such a character that the [complaining] party would not have consummated the contract had he known the falsity of the statement." *Id.* (emphasis added) (citation omitted).

Allied World argues that Lovette's denial of the specific questions on both the 2018 and 2019 Applications, coupled with his own testimony about the Wheeler dispute in 2017 and the knowledge of the pending arbitration in 2019, shows Lovette made misrepresentations. Further, as Allied World notes, both Policies included the Named Insured Endorsement under which the policyholder agrees that all statements contained within the policy application are: (1) true, accurate, and complete; (2) incorporated into and made a part of the policy; (3) based on representations made by the policyholder to Allied World; and (4) relied on by Allied World in this issuance of the policy. Allied World contends the Lovette Defendants were well aware their representations and omissions were material to Allied World's decision in issuing the policy.

14

Defendants refute this argument by contending that, because of the strict language included in its 2018 and 2019 Applications, Allied World is required to prove more than innocent misrepresentation to succeed under Alabama Code § 27-14-7(a)(1); rather, it must prove intentional fraud. (Doc. # 48 at 8). And, because there is no evidence that Lovette intended to defraud Allied World when he answered the questions on either insurance application, Defendants argue Allied World cannot make such a showing. (*Id.*).

Typically, Section 27-14-7(a) allows for rescission of an insurance policy in cases of innocent misrepresentations; however, insurers may, through policy language they use or the policy application they adopt, raise the standard of proof for rescission to a knowing or intentional misrepresentation or concealment. *See State Farm Fire and Cas. Co. v. Oliver*, 854 F.2d 416, 418-20 (11th Cir. 1988); *Healthcare*, 308 F. Supp. 2d at 1270, 1286. Defendants argue Allied World's language in the two applications did just that – contractually limited its right to rescind to only instances where the Lovette Defendants "knowingly and with intent to defraud" or "willfully" made a misstatement or concealed information. (Docs. # 33-7 at 9; 33-9 at 5). Defendants therefore contend that Allied World must show that the Lovette's misrepresentations in the 2018 and 2019 Applications were underlined intentionally fraudulent to succeed under Section 27-14-7(a)(1). (Doc. # 48 at 8).

But, Defendants' argument makes a critical misassumption: that the language in Allied World's 2018 and 2019 Applications raises the standard of proof under Section 27-14-7(a). It does not. Allied World's 2018 Contractor's Supplemental Application includes the following disclaimer:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statements of claim containing any materially false information or conceals for the purpose of misleading,

information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

(Doc. # 33-7 at 9). Similarly, the 2019 Contractor's Supplemental Application states:

Any person who knowingly…presents a false or fraudulent claim for payment of a loss or benefit or knowingly … presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

(Doc. # 33-9 at 9).

This court has previously analyzed language identical to Allied World's 2018 Contractor's Supplemental Application disclaimer and found that that language does not elevate the standard of proof for voiding coverage under an insurance policy. *Cont. Cas. Co. v. Piggly Wiggly Ala. Distribut. Co., Inc.*, 2015 WL 4426030, at *19 (N.D. Ala. 2015).

The plain language of [the policy] does nothing more than advise the insured of potential consequences of intentional insurance fraud. Without more, a simple warning and disclaimer stating that an insured may be subject to criminal and civil penalties for intentional insurance fraud does not alter or in any way heighten the statutory standard for recission.

*Id.*

The same is true here. Under the language of Section 27-14-7(a)(1) and the text of Allied World's policies, even if Lovette's misrepresentations were innocently made, Allied World has a right to void the policy so long as the misrepresentations were (1) material and (2) relied upon. And, based on this record, it is readily apparent that the applications contain misrepresentations. But, as discussed in greater detail below, the materiality of such a misrepresentation is typically a question for the jury. *Guster Law Firm, LLC*, 944 F. Supp. 2d at 1125-26 (citing *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So. 2d 759, 766 (Ala. 2004)).

**b.    Whether Lovette's misrepresentations were material is a question for the jury.**

Under Section 27-14-7(a)(1), Allied World is entitled to void its policy with the Lovette Defendants so long as it can show the following: (1) a misrepresentation; (2) of a material fact; (3)

16

that was relied upon by Allied World; and (4) damage proximately caused by the misrepresentation. *Sherrin*, 2 F.3d at 378 (11th Cir. 1993) (citing *Earnest*, 401 So. 2d at 754; *AmerUS Life Ins. Co.*, 5 So. 3d at 1207). Similarly, the policy may be rescinded under Section 27-14-7(a)(2) if Allied World can show that the Lovette Defendants made a misrepresentation material either to the acceptance of the risk or to the hazard assumed by the insurer. Thus, here, Allied World's success hinges on the materiality of the misrepresentations.

"In general, a fact is material if it would have increased the risk of loss to the insurer and would have induced a rational underwriter to reject the risk or accept it only at an increased premium." *Scottsdale Indem. Co. v. Martinez*, 615 Fed. App'x 549, 554 (11th Cir. 2015) (citing *Clark v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 465 So. 2d 1135, 1139 (Ala. Civ. App. 1984)). "The question of whether a particular fact is or is not material is almost always invariably a question for the jury, which is entitled to consider the factual context in which the determination is to be made." *Oliver*, 658 F. Supp. at 1552.

Nonetheless, as Allied World points out, Alabama law recognizes some exceptions to the general rule that materiality of a fact reported on an application is typically a fact issue reserved for the trier of fact. *See, e.g.*, *Integon Nat. Ins. Co. v. MT & R Enters., Inc.*, 2012 WL 6043504, at *4 (N.D. Ala. 2012) (analyzing Section 27-14-7 and citing a series of Alabama cases finding misrepresentations material as a matter of law). Pointing to these exceptions, Allied World maintains that this court should find that Lovette's misrepresentations were material as a matter of law. Allied World compares the misrepresentations here to those in *Pabon* and *Scottsdale*. In those decisions, the courts held that the insureds' misrepresentation on insurance applications increased the risk of loss as a matter of law and thus were material to the issuance of the policy. But, the material facts here are distinguishable from the key facts in those cases.

First, in *Pabon*, the Supreme Court of Alabama held that an insured's misrepresentation that neither she nor her husband had filed for bankruptcy during the last seven years was material to the insurance company's acceptance of the risk because, at the time the application was submitted, any applicant who had filed a bankruptcy petition within that time was automatically ineligible for an insurance policy. 903 So.2d at 767. In other words, the misrepresentation was material because it was undisputed that, if the matter had not been misrepresented, the insurance company would not have issued a policy at all. *Id.* at 767-68.

Unlike in *Pabon*, Allied World has not pointed to a policy or notice to applicants that anyone with prior claims is automatically ineligible for coverage. *See also Alfa Life Ins. Corp. v. Lewis*, 910 So. 2d 757, 762 (Ala. 2005) (holding that an insured's misrepresentation that she did not have congestive heart failure was material to the issuance of a life insurance policy when the application specifically notified the applicant that if that medical condition existed or had existed in the last two years, the applicant was not eligible for coverage). Instead, the existence of a prior claim is just one factor to be considered in the evaluation process.

In *Scottsdale*, the Eleventh Circuit held that an applicant's misrepresentation that it had "internal accounting controls and independent oversight" was material because, among other things: (1) the insurance company's underwriter executed a declaration stating that the company's underwriting policies assigned a higher rating factor and total premium when an insured answers "no" to those questions; (2) the underwriting guidelines provided that an upward "rating modifier" applied when "no" responses were given to those questions; and (3) the application warned that all responses were considered material. 615 Fed. App'x at 554-556.

The Rule 56 evidence presented by Allied World also differs from that evaluated in *Scottsdale.* To be sure, like in *Scottsdale*, Allied World has sought to establish materiality by presenting affidavit testimony (from Preston Starr, the President of C&S Underwriters ("C&S")). (Doc. # 33-5). And, in his affidavit, Starr attests that (1) all the questions in Allied World's application are asked for a specific reason and are material to the underwriter who assesses the risk and (2) had Lovette answered "yes" to any of the Supplemental Application questions, C&S would have charged a higher premium for the policy. (*Id.* at ¶ 17). But, unlike in *Scottsdale*, Allied World's application included no language informing the applicant that all of the responses were considered "material."[7] And, although Allied World points to C&S's Construction Underwriting Guidelines in an effort to establish that C&S would have quoted a higher rate for the policies at issue if Lovette had answered fully, the Guidelines' language suggest that this is just one of many criteria considered when evaluating a rate. It does not establish that rates *automatically* would be raised.[8]

---

[7] As noted earlier, both insurance policies contained a "Named Insured Endorsement" that states, in relevant part:

> By accepting this policy, each Named Insured agrees:
>
> a. The statements contained in Policy Declarations and any other supplemental materials, application and information submitted herewith are true, accurate, and complete, and such statements and representations are incorporated herein and made a part of this policy;
> b. Those statements are based upon representations you made to us; and
> c. We have issued this policy in reliance on your representations, and such statements and representations are incorporated herein and made a part of this policy.

(Docs. # 1 at ¶ 57; 33-6 at 48). However, the court notes that none of this language explicitly refers to this information as "material" as in *Scottsdale.*

[8] Allied World submitted C&S's Construction Underwriting Guidelines ("the Guidelines"), which call for the "use of proprietary forms and endorsements to limit exposure to prior occurrences and defense obligations" and state:

> Premiums for construction risks are calculated using a proprietary rating process (based on an ISO rating methodology) that incorporates risk factors to elevate rates for higher hazard classes based on historical loss experience for those classes. Other underwriting criteria are considered in the development of the rate, including the company claims history and the qualifications of the key personnel who perform the services. Underwriting includes the evaluation of resumes, educational

Further, "under Alabama law, the uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would have issued the policy as written, is not necessarily dispositive." *Bennett v. Mut. of Omaha Ins. Co.*, 976 F.2d 659, 661 (11th Cir. 1992). When analyzing an insurance claim like this one, Judge Kallon of this court stated:

> Unfortunately for [Plaintiff], the limited cases that have found materiality as a matter of law are distinguishable from this case. In fact, [Plaintiff] does not point to any case that granted summary judgment based on misrepresentations that are similar to those here. Instead, [Plaintiff] relies solely on the testimony of its underwriter … to establish materiality. However, as [Defendant] correctly points out, courts are reluctant to accept a "self-serving evaluation" by an insurer's employee. (citing *Oliver*, 658 F. Supp. at 1553). ("[T]he insurance company cannot be allowed automatically to avoid coverage simply because its own employee testified that the company would not have undertaken the risk had it known the truth as to the particular fact. If this were the law, insurance companies would be sorely tempted to defend, as [Plaintiff] has done here, almost very claim of loss.") … Based on the case law and the record before this court, this court cannot conclude as a matter of law that [Defendant] made material misrepresentations in its application, nor can it agree with [Defendant] either … that it is due summary judgment under section 24-14-7.

*Guster Law Firm, LLC*, 944 F. Supp. 2d at 1128. The court agrees.

None of the cases cited by Allied World involved a court granting summary judgment based on misrepresentations and policy language identical to those here. Therefore, based on the case law and the Rule 56 record before the court, this court cannot conclude as a matter of law that the misrepresentations made were material as a matter of law so as to warrant summary judgment under either Section 24-14-7(a)(1) or (2).

---

background training and licensing, certifications, and past projects. Risk size and financial history are also considered.

(Doc. # 46-1, filed under seal).

### 2. Allied World is entitled to rescind the insurance policies under Section 24-14-7(a)(3).

Although the court cannot conclude that Lovette's misrepresentations were material as a matter of law under Section 24-14-7(a)(1) and (2), in Alabama, and in rescission cases such as this, materiality is not the only issue. Even if the court were to assume that Clint Lovette's misrepresentations on the insurance applications were "immaterial" under Section 24-14-7(a)(1) or (2), Allied World may still be entitled to rescind under Section 24-14-7(a)(3). Under Section 24-14-7(a)(3), an insurer may void a policy if it can show that:

> The insurer in *good faith* would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 24-14-7(a)(3) (emphasis added); *see also HealthSouth*, 308 F. Supp. 2d at 1269-70 (citations omitted).

"The key question with regard to the availability of § 24-14-7(a)(3) as a defense is the good faith of the insurer in refusing to issue the policy." *Baker*, 207 F. Supp. 3d at 1253 (citing *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1275 (Ala. 1993)). "The Alabama Supreme Court holds that, in order for an underwriting policy to be in 'good faith' under (a)(3) and eligible for rescission, the policy in question need only be universally applied." *Mega Life and Health Ins. Co. v. Pieniozek*, 516 F.3d 985, 989 (11th Cir. 2008). Therefore, "[a]n insurer interposing § 27-14-7(a)(3) as a defense has the burden of demonstrating that its underwriting guidelines in dealing with similar misrepresentation are equally and evenly applied." *Sharp Realty and Mgmt., LLC v. Capitol Specialty Ins. Corp.*, 2012 WL 2049817, at *23 (N.D. Ala. 2012) (citations omitted).

To meet this burden, Allied World once again offers the affidavit of Preston Starr. In his affidavit, Starr states that, had Lovette given a "YES" answer to any of the questions at issue in

this matter, "C&S would have … charged a higher premium for the Policy and would never have issued a Policy that provided coverage for any claims out of Lovette's work done for [the Wheelers]." (Doc. # 33-5 at ¶ 17). In addition, Starr affirms that, whenever an applicant discloses a known incident that could arise into a future claim, C&S consistently and repeatedly attaches a "Known Claimant/Incident Exclusion" Form to the policy that documents "the name of the party alleging potential wrongdoing, the date of the alleged loss, and as many specific details as possible, so that if a claim shows up in the future on the policy, [C&S and Allied World] have an exclusion specifically excluding coverage for that claim." (*Id.* at ¶¶ 14-16).

As discussed above, "under Alabama law, the uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would have issued the policy as written, is not necessarily dispositive." *Bennett*, 976 F.2d at 661. But testimony from an insurance company's underwriter that is "supported by other uncontradicted evidence in the record" -- such as the company's underwriting guidelines -- can be sufficient to establish materiality or that a company in good faith would not have issued the policy as written as a matter of law. *Scottsdale*, 615 Fed. App'x at 555-56. This is the case here.

C&S's Underwriting Guidelines state that "C&S['s] approach to underwriting construction defect exposure is based on the following tenants …" and continues to list a myriad, including the "[u]se of proprietary forms and endorsements to limit exposure to prior occurrences and defense obligations." (Doc. # 46-1 at 4 ¶ 5, filed under seal). These underwriting guidelines support Starr's undisputed testimony that, at a minimum, had Allied World been aware of any pending claims or suits at the time the application was submitted, it would have attached the "Known Claimant/Incident Exclusion" Form to the Lovette policy, which states:

> It is agreed that this policy is amended as follows…This insurance does not apply
> to any "bodily injury," "property damage," "personal and advertising injury,"

liability, loss, injury, damage, claim, "suit", "occurrence", incident, cost, expense or other proceeding:

> 1.  Known to any insured or in the process of settlement, adjustment, claim or "suit" as of the inception date of this policy, or the retroactive date of this policy, if any; or
> 2.  Relating to any matter where any insured was aware of any actual, alleged or suspended defective inadequate or otherwise faulty work, equipment, materials, products, or components as of the inception date of this policy, or the retroactive date of this policy, if any; or
> 3.  Which is, or alleged to be, in the process of occurring as of the inception date of this policy, or retroactive date of this policy, if any, even if the "occurrence" or resulting injury or damage continues subsequent to the inception date of this policy, or retroactive date of this policy, if any.

We shall have no duty to defend any insured or additional insured against any "bodily injury," "property damage," "personal and advertising injury," liability, loss, injury, damage, claim, "suit", "occurrence", incident, cost, expense or other proceeding alleging damages to which this endorsement applies.

(Doc. # 33-8 at 2).

Under this policy, any claims arising from Lovette's contract with the Wheelers would have been excluded in connection with both the 2018 and 2019 Applications. At the time the 2018 Application was submitted, Lovette was already aware that the Wheelers had alleged "poor performance" and stated that a lawsuit seemed imminent. And, at the time the 2019 Application was submitted, the *Wheeler* arbitration had already been pending for six months. Therefore, under this universal policy, Allied World has met its burden of showing that it would not have provided coverage with respect to the Wheeler's claims if the true facts had been divulged as required by the application for either the 2018/2019 or 2019/2020 Policies.

Defendants refute this contention only by arguing that, even if Allied World *had* known of the Wheeler's potential claims when issuing the policy, such knowledge should not have required it to issue a "Known Claimant/Incident Exclusion" Form as the potential claim would not be covered by the policy in any event. But this argument misses the mark. The Underwriting

Guidelines clearly show that it was Allied World's custom to issue the "Known Claimant/Incident Exclusion" Form any time it was notified of a prior occurrence, thus supporting its submission of undisputed evidence showing that, but for the misrepresentation, Allied World would not have issued the policy *in the manner it did*. Therefore, Allied World is relieved of its duty to defend the *Wheeler* claims.

Further, as a result, Allied World is also relieved of its duty to indemnify with respect to the *Adams* suit as well. The Supreme Court of Alabama has made clear that rescission of one policy under Section 24-14-7(a) also applies to any renewal policies as well. "Section 27-14-7 protects insurers from having to pay claims made under an insurance policy or contract if, 'in <u>any</u> application for an insurance policy,' the insured made a fraudulent or material misrepresentation or if the insurer would not have issued the policy had it known the truth. The statue does not differentiate between original applications and renewal policies." *Ex parte Quality Cas. Ins. Co.*, 962 So. 2d 242, 246 (Ala. 2006) (emphasis added).

For these reasons, summary judgment in Allied World's favor is due to be granted, and both Policies are due to be rescinded under Section 24-14-7(a)(3).

> **B.    Alternatively, Allied World is Entitled to Summary Judgment because the Lovette Defendants Breached the Notice Policy with Respect to the *Wheeler* Claims.**

Even if the Lovette Defendants' insurance policies were not due to be rescinded under Section 24-14-7(a)(3) (and, to be clear, the court holds that they are), Allied World would still be released from its obligation to defend the Lovette Defendants with respect to the Wheeler claims because the Lovette Defendants breached the Notice Policy.

Allied World's Insurance Policies contained a clause requiring the Lovette Defendants to provide notice of an "occurrence" which may result in a claim or a "suit" that is brought against the insured "as soon as practicable." The Notice Policy states:

> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim…**b.** If a claim is made or "suit" is brought against any insured, you must…[n]otify us as soon as practicable…You must see to it that we receive written notice of the claim or "suit" as soon as practicable. **c.** You and any other insured must…[i]mmediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit."

(Docs. # 33-6 at 16; 1 at ¶ 65-67).

"[T]he failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insureds to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract." *Reeves v. State Farm Fire and Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989). "Under Alabama law, 'as soon as practicable' means notice must be given 'within a reasonable time in view of the facts and circumstances of the case.'" *Am. Builders Ins. Co v. Riverwood Constr., LLC*, 2022 WL 4367055, at *5 (N.D. Ala. 2022) (quoting *Travelers Indem. Co. of Conn. v. Miller*, 86 So. 3d 338, 342 (Ala. 2011)). When evaluating whether a delayed notice was reasonable under Alabama law, there are only two factors for a court to consider: (1) the length of the delay and (2) the reasons for the delay. *Id.* (citing *Miller*, 86 So. 3d at 342).

It is undisputed that Allied World received notice of the Wheeler claim on June 16, 2020. (Doc. # 33-12 at 2). The Rule 56 evidence also establishes three dates where the Notice Clause could have been triggered:

> (1) September 2017 – the Wheelers' initial threat of "financial consequences" that Lovette admitted "sounded like a lawsuit" and their letter informing Lovette Construction that they were considering all available options for remedying the situation (33 months before the notice). (Docs. # 33-2; 33-3 at 82:12-18; 33-4).

(2) October 11, 2018 – the date the Wheelers filed the Arbitration Complaint (20 months before the notice). (Doc. # 5-1).

(3) March 16, 2019 – the date the Lovette Defendants identified as the "Date of Loss" on the "General Liability Notice of Occurrence/Claim" provided to Allied World (15 months before the notice). (Doc. # 33-12 at 2).

Allied World argues that, no matter which date is utilized to determine the length of the delay, all three are unreasonable as a matter of law. This court agrees.

Viewing the evidence in the light most favorable to Defendants and using the shortest time period -- the "Date of Loss" identified on the notice sent to Allied World -- Lovette knowingly waited (at least) fifteen months before alerting Allied World of the Wheeler's claims. Alabama courts have found that much shorter delays require the insured to state a reasonable excuse for the delay. *See Nationwide Mut Fire Ins. Co. v. Est. of Files*, 10 So. 3d 533, 536 (Ala. 2008) ("A five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay"); *Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983) (eight-month delay); *Sharp Realty*, 2012 WL 2049817, at *14-15 (eight-month delay); *S. Guar. Ins. Co. v. Thomas*, 334 So. 2d 879 (Ala. 1976) (six-month delay).

Although the reasonableness of an excuse for delayed notice is normally a question for the finder of fact, "when an insured does not offer a reasonable excuse for its delay in notifying its insurer of a claim, the issue may be decided as a matter of law." *Riverwood Construction, LLC*, 2022 WL 4367055, at *7. Here, not only have the Lovette Defendants failed to appear in this case, but also they failed to offer any reasonable excuse to justify their delayed notice.

Because of the length of the delay, and because the Lovette Defendants failed to provide an objectively reasonable excuse for the delay, this court has no hesitation in finding as a matter of law that the Lovette Defendants breached the Notice Policy. As a result, for this additional

reason, Allied World is entitled to summary judgment with respect to its declaratory judgment claim with respect to the *Wheeler* arbitration.[9]

## V.        Conclusion

For all of these reasons, Allied World is entitled to summary judgment in its favor on all claims asserted in its Complaint for Declaratory Judgment. A separate order entering judgment in Allied World's favor will be entered contemporaneously.

**DONE** and **ORDERED** this March 15, 2024.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[9] The court notes that Allied World also seeks a declaratory judgment that it has no duty indemnify Lovette Properties with respect to the *Wheeler* arbitration. However, "an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action." *Accident Ins. Co. v. Greg Kennedy Builder, Inc.*, 159 F. Supp. 3d 1285, 1288 (S.D. Ala. 2016); *see Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 776 F. App'x 768, 770 (11th Cir. 2019) ("[An] insurer's duty to indemnify [the insured] is not ripe for adjudication until the underlying lawsuit is resolved."). Here, the underlying lawsuit in the *Wheeler* arbitration is in its infancy, no judgment has been issued, and no settlement has been reached. Therefore, "[a]ny discussion of the duty to indemnify would be premature … given the lack of any final adjudication of the [u]nderlying [a]ction." *Essex Ins. Co. v. Foley*, 2011 WL 1706214, at *3 (S.D. Ala. 2011). As a result, because Allied World's duty to indemnify claim in the *Wheeler* action is not yet ripe for review, it is also due to be dismissed for this reason.

The parties' briefing also raises questions about the duty to defend. Allied World is currently providing the Lovette Defendants with a defense in the underlying *Wheeler* action. The Lovette Defendants seek a continuing defense in the *Wheeler* arbitration; however, Allied World asserts that it is not required to provide any defense in that matter. Allied World's duty to defend claim is certainly ripe. But, because the policies under which a purported duty to defend arises are due to be rescinded, it follows that there is no continuing duty to defend.